UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARILYN WALKER o/b/o NW          CIVIL ACTION NO. 06-1687

VERSUS          JUDGE HICKS

U.S. COMMISSIONER SOCIAL          MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

NW was born in September of 1994. His mother filed an application for disability that alleged the child is disabled due to ADHD and related issues. ALJ Charles Lindsay denied the claim, and the Appeals Council found no basis to review his decision. The claimant then filed this action for judicial review pursuant to 42 USC § 405(g).

**The ALJ's Decision**

A child is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or last a continuous period of at least one year. 42 U.S.C. § 1382(c)(a)(3)(C)(i). The Commissioner has published regulations to implement that standard. Those regulations require a three-step evaluation process. 20 C.F.R. § 416.924.

The first step is to determine whether the child has engaged in substantial gainful activity. If not, the evaluation continues to the second step, which involves a determination of whether the child has an impairment or combination of impairments that is "severe,"

meaning more than a slight abnormality that causes only minimal functional limitation. The third step involves a determination of whether the child's impairment meets, medically equals, or functionally equals the severity of a listed impairment. § 416.924a(d); Sullivan v. Zebley, 493 U.S. 521, 526 (1990). If so, and the twelve month durational requirement is met, the child is disabled. If not, the child is not disabled. § 416.924(d)(1) and (2).

The ALJ found that NW passed the first two steps of the evaluation because (1) he had not been working and (2) he suffered from ADHD and a conduct disorder, impairments that are severe. He found at step three that NW's impairments did not meet or medically equal a listed impairment. He then proceeded to determine whether NW had impairments that functionally equaled a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains, listed in § 416.926a(b)(1), are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for yourself

(6) health and physical well-being.

The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he

has an *extreme* limitation in *one* domain or a *marked* limitation in *two* domains. § 416.926a(d). The levels of severity are further described in the regulation.

A marked limitation is "more than moderate" but "less than extreme." It interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. § 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416.926a(e)(3).

The ALJ found that NW had *no* limitation in the domains of acquiring and using information, moving and manipulating objects, caring for yourself, and health and physical well-being. He found that NW had a *moderate* limitation of functioning in the domain of attending and completing tasks, as well as in the domain of interacting and relating with others. The child did not have an extreme limitation in any domain and did not have a marked limitation in two domains, so he was found to be not disabled within the meaning of the regulations.

**Issues on Appeal**

The claimant has asserted two issues on appeal. She argues that (1) the ALJ did not have substantial evidence to support his decision and (2) the ALJ did not afford adequate deference to treating sources.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**The Evidence**

The record contains documentation of several visits by NW to Dr. Wyche Coleman, Jr., a family practice physician. The records range from a visit in 2001 to visits in 2005. Dr. Coleman reported that the child was seen for ADHD and prescribed medication. He frequently commented that the medication had led to dramatic improvements. On one occasion in 2001, the medication had been discontinued by the child's mother. The school nurse sent a letter that reported the second grader had severe trouble paying attention. The

medication was started again and, within a month, the child had no complaints and was doing well in school. By 2004, Dr. Coleman recorded that "the medication is helping dramatically" and the child's mental status is normal. It was written in 2005 that the child's "academic performance has dramatically improved on this treatment regime and his Mom confirms this. He is on the Honor Roll this month." At the final visit reflected in the record, in May 2005, Dr. Coleman reported that NW had completed the fifth grade and been promoted. He was doing well on his medication. Tr. 204-21.

Dr. Frank Hughes saw NW on several occasions during 2001 to 2003. NW was taking Ritalin at the time of the first reported 2001 visit, but it was not helping. The medication was changed, and later reports indicated that the child was "doing much better" and performing "well in school." There were, however, some continuing complaints of anger and behavior problems. Medication was adjusted as needed. Tr. 140-50.

A mental health technician signed a letter in June 2005 that spoke of her work with the child years earlier in 2001. She reported that NW, at that time, had difficulty concentrating and behaving in class. The child was also very emotional and verbally assertive. Tr. 222. Those events, however, preceded the success with medication that Dr. Coleman reported in later years.

The claimant also points to an individual evaluation prepared by the Red River Parish School Board. The report stated that the child exhibited age appropriate cognitive and communication skills, and he appeared to be intelligent, but his ability to participate in

normal activities was significantly impaired due to inappropriate social skills and expression of emotions. Tr. 73-82. That report is also discounted due to its 1999 date.

Plaintiff also points to several reports from the school system that NW was disciplined for using profanity, willful disobedience, fighting, habitually violating rules, and other significant misconduct. All of those reports occurred in 2001 and 2002. Tr. 71-72.

Ross Gamble, M.Ed., a counselor for the school system, wrote a letter in June 2005 regarding NW's case. He reported that the child consistently had much difficulty adapting and adjusting to a formal school setting. The child showed limited attention span, difficulty accepting authority, and inability to comprehend and apply guidelines for behavior. The child would often act out and interrupt the education process. Tr. 130.

Plaintiff also points to a report from the Red River Mental Health Clinic, which was prepared in 1999. At that time, when NW was four, he had demonstrated anger and misbehavior, and he had even slapped a teacher and threatened to kill himself. He had also demonstrated cruelty to animals and had cut himself with a razorblade. Dr. Fort, the staff psychiatrist, diagnosed ADHD and discussed medication with NW's mother. Tr. 178-80. The record, as discussed above, demonstrates that medication was prescribed and was very beneficial in treating the problems that existed at this earlier time.

The ALJ directed interrogatories to a medical expert, Dr. Barbara Felkins. She reviewed the file, but she did not examine the child personally. Dr. Felkins described the child's impairments as "ADHD severe - improved to mild on medication" and "conduct

disorder severe - improved to mod on medication." She noted that a teacher reported that the child was her sweetest and best student and only acted up when he had not taken his medication. Tr. 223-29. Other aspects of Dr. Felkins' report are discussed below.

**Analysis**

The ALJ found that NW had no limitation in the areas of moving about and manipulating objects, caring for yourself, and health and well being. Tr.18. The claimant's brief does not specifically address any of the relevant domains or make clear which domains claimant believes the ALJ assessed improperly. A fair reading, however, indicates no argument with respect these domains.

The ALJ found that NW had no limitation of functioning in acquiring and using information.[1] He pointed out that the child was enrolled in regular curriculum, had never been retained in a grade, and had been on the Honor Roll. Dr. Felkins reached the same conclusion in her report. Tr. 226. That and the other evidence discussed above lend substantial evidence to support the ALJ's conclusion.

The ALJ found that NW had a moderate limitation in attending and completing tasks. That degree of limitation was based on the observation that the child exhibited problems when not on a proper medication schedule. Dr. Felkins agreed that the child had a "less than

---

[1] The page of the ALJ's decision that set forth the ALJ's findings on this domain and the domain of attending and completing tasks was not included in the record that the agency filed with the court. The court has obtained a copy of the missing page from the local Office of Hearings and Appeals and inserted it in between Tr. 17 and 18.

marked" limitation in that area. Tr. 226. The ALJ also assessed a moderate limitation in interacting and relating with others. Tr.18. He noted social problems that the child demonstrated at an early age, which largely resolved in later years with medication. Once again, Dr. Felkins also assessed a less than marked limitation in this area, noting that the child did still have occasional problems with fighting and self-centeredness. Tr. 227. Her report and the other evidence discussed above provide substantial evidence to support the ALJ's decision with respect to these areas.

The claimant makes a bare assertion in the conclusion of her memorandum that the medications cannot be purchased because of expense. No record evidence is cited to support that contention. The child's mother did say that she had sometimes borrowed money to buy medication. Tr. 257. The ALJ observed in his written decision that "indigent care is available in the area in which claimant lives and medication can be obtained from that source." Tr. 18.

A medical condition that can reasonably be remedied by medication is not disabling, but if the claimant cannot afford the prescribed medication "and can find no way to obtain it" the condition continues to be disabling. Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). In this case, however, there is no evidence that the claimant could not afford or otherwise obtain the needed medication, and the record suggests that the child was regularly given the medication during school terms.

Finally, the claimant argues that the ALJ afforded too much weight to Dr. Felkins' opinions as opposed to evidence from treating sources Dr. Coleman and Dr. Frank Hughes. Plaintiff does not, however, point to any actual opinions offered by those physicians that would be in conflict with Dr. Felkins' report. Neither of the treating physicians issued a written opinion. Rather, their ordinary treatment records were simply filed in the record. The ALJ committed no error in this respect.

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed and that the claimant's complaint be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of February, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE